**No. 26-879**

**IN THE UNITED STATES COURT OF APPEALS FOR
THE SECOND CIRCUIT**

**ABDUL MUKIT, SUKY BEGUM and SABA ABDUL**

**Petitioners,**

**v.**

**TODD BLANCHE, Acting Attorney General of the United
States**

**Respondent.**

**Petition for Review of a Final Order of the
Board of Immigration Appeals**

**EMERGENCY MOTION FOR STAY OF REMOVAL**

**(AGENCY NO. A246778558,
A246778559, A246778560)**

Michael E. Piston
Attorney for the Petitioner
38-08 Union St, Suite 9A
Flushing, NY 11354
Ph: 646-876-3772
Fax: 206-770-6350
Email: michaelpiston4@gmail.com

**TABLE OF CONTENTS**

EMERGENCY MOTION FOR STAY.................................................................4

BRIEF STATEMENT OF RELEVANT FACTS AND CASE HISTORY...............6

APPLICABLE LEGAL STANDARD....................................................7

   I. APPLICATION OF THE LEGAL STANDARD TO THE INSTANT CASE..8

   A. Mr. Mukit is likely to prevail on the merits of his petition............................8

   1. This Court has subject matter jurisdiction to review the BIA's dismissal of Mr. Mukit's appeal.......................................................................8

   2. The IJ's conclusion that the DHS rebutted the presumption that Mr. Mukit had a well-founded fear of persecution was not in accordance with law.................8

   a.  Whether the DHS rebutted the presumption that Mr. Mukit had a well-founded fear of persecution is a question of law.........................................9

   b.  This Court reviews questions of law arising in review of BIA decisions de novo...............................................................................10

   c.  The mere fact that AL's leader no longer leads Bangladesh does not rebut the presumption that Mr. Mukit has a well-founded fear of persecution.........11

   d.  Any ban on AL "activities" does not prevent it from persecuting its opponents......................................................................17

   B. Mr. Mukit will suffer irreparable harm if he is removed...........................18

   C. Public Interest Favors a Stay....................................................20

CONCLUSION........................................................................20

CERTIFICATE OF COMPLIANCE................................................21

CERTIFICATE OF SERVICE..............................................................................21

## TABLE OF AUTHORITIES

**Code of States Codes**

8 U.S.C. §1182(a)(6)(A)(i)...........................................................................6

8 U.S.C. §1208..............................................................................................8

8 U.S.C. §1231(a)(1).....................................................................................5

8 U.S.C. §1231(a)(2).....................................................................................5

**Federal Rules**

Rule 18 of the Federal Rules of Appellate Procedure......................................4

**Federal Cases**

*Beyhaqi v. Noem*, 2025 U.S. Dist. LEXIS 80136, 2025 WL 1196003, (S.D. Tex. Apr. 22, 2025)...............................................................................................19

*Borja v. INS*, 175 F.3d (9th Cir.1999)...........................................................18

*Burger v. Gonzales,* 498 F.3d 131, 135 (2d Cir. 2007)..................................17

*Fergiste v. INS*, 138 F.3d (1st Cir. 1998)......................................................13

*Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 225 (2020)................................10

*Hernandez-Barrera v. Ashcroft*, 373 F.3d (1st Cir. 2004)............................13

*Huisha-Huisha v. Mayorkas*, 27 F.4th (D.C. Cir. 2022)...............................19

*Lee v. Ricks*, 388 F. Supp. 2d (WDNY 2005)..................................................7

*Mahdejian v. Bradford*, 2025 U.S. Dist. LEXIS 154931, 2025 WL 2269796,

(E.D. Tex. July 3, 2025)..................................................................................19

*Mendez v. Garland*, 67 F.4th (1st Cir. 2023).......................................................11

*Mercado v. Francis*, 811 F. Supp. 3d (S.D.N.Y., 2025)…………………………5

*Misirbekov v. Venegas*, 793 F. Supp. 3d, 2025 U.S. Dist. LEXIS 151432,
 2025 WL 2201470, at (S.D. Tex. Aug. 1, 2025)................................................19

*Mohammed v. Reno*, 309 F.3d (2d Cir. 2002)........................................................7

*Nken v. Holder*, 556 U.S. 418 (2009)..................................................................20

*Nunez v. Boldin*, 537 F. Supp. (S.D. Tex. 1982)………………………………..19

*Palma-Mazariegos v. Gonzales*, 428 F.3d (1st Cir. 2005)…………………...11

*Secaida-Rosales v. INS*, 331 F.3d (2d. Cir. 2003)...............................................10

*Singh v. Garland*, 4 F.4th (5th Cir. 2021)...........................................................19

*Tambadou v. Gonzales*, 446 F.3d 298 (2d. Cir. 2006)………………..………11

*Tesfamichael v. Gonzales*, 411 F.3d (5th Cir. 2005)…………………………...20

*Thapa v. Gonzales*, 460 F.3d (2d Cir. 2006)…………………………………….8

Administrative Cases

Matter of E-M-F-S-, 29 I&N Dec. 379, 384 (BIA 2026)..................................7

Matter of Yajure-Hurtado, 29 I&N Dec. 216 (BIA 2025)...............................5

## EMERGENCY MOTION FOR STAY

Pursuant to Rule 18 of the Federal Rules of Appellate Procedure, Petitioner Abdul Mukit files this Motion to Stay Removal. This is an **emergency motion** because the Petitioner has received a notice from the Department of Homeland Security (DHS), attached as Exhibit 4, requiring him to appear before it on April 10, 2026. Inasmuch as (unless this Court issues a stay of removal) he will be in his

"removal period"[1] on that date, the Immigration and Nationality Act provides that the DHS "shall" detain and remove him. 8 U.S.C. §§ 1231(a)(1) & (2). Only after a stay of removal is issued will the agency not be able to remove the Petitioner, nor will his detention necessarily be mandatory.[2] Therefore, failure to act upon this motion on an emergency basis will expose him to the persecution he fears in Bangladesh without this Court even having the opportunity to review the dubious basis for the denial of his application for asylum.

The stay should be granted because Mr. Mukit is likely to prevail on the merits of his petition, will suffer irreparable harm if removed, and the public interest favors a stay. Specifically, the IJ erred in denying the Petitioner asylum, despite finding that he had suffered persecution in Bangladesh in the past, almost solely because the party whose members persecuted him no longer provides the prime minister of Bangladesh

---

[1] "(A) …[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").
(B) … The removal period begins on the latest of the following:
**(i)** The date the order of removal becomes administratively final.
**(ii)** If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order. …" 8 U.S.C. § 1231(a)(1) (in relevant part).
[2] The Board of Immigration Appeals has held that persons who, like the Petitioner, have entered without inspection are subject to mandatory detention even outside the removal period. *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025**).** Nevertheless, numerous courts of this district have held such persons to be eligible to apply for a bond. *See, e.g., Mercado v. Francis*, 811 F. Supp. 3d 487 (S.D.N.Y., 2025).

even though abstract evidence of generalized changes in country conditions, without more, cannot rebut a presumption of a well-founded fear of future persecution. Further, the Petitioner will suffer irreparable harm if removed to a country in which he is likely to be persecuted, and the public interest favor not removing a noncitizen to a place where he is likely to suffer substantial harm.

BRIEF STATEMENT OF RELEVANT FACTS AND CASE HISTORY

Abdul Mukit is a native and citizen of Bangladesh who entered the U.S. without inspection on April 12, 2023. Form I-589 (Exhibit 1) at 1.  On April 12, 2025, the DHS served him with a Notice to Appear ("NTA"), charging him with removability pursuant to section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), as being present in the U.S. without being admitted or paroled. On May 8, 2025, he applied to the Immigration Judge (IJ) for asylum, withholding of removal and protection under the Convention Against Torture. Decision and Order of the Immigration Judge (Exhibit 2) at 1-2. In that application he alleged that he had been persecuted by the Awami League on account of his pro-Liberal Democratic Party (LDP), anti-Awami League opinion.

A hearing was held on October 24, 2025, in which Mr. Mukit testified to an incident in which he was beaten unconscious with sticks while being threatened with death, as well as to numerous other threats issued to him and his family by members of the AL and the refusal of the police to accept any complaints against such party

members. Tr. At 19-40. Nevertheless, the next day, the IJ denied his applications and ordered him removed. The IJ found that Mr. Mukit suffered past persecution on account of his political opinion, namely being a member of the Liberal Democratic Party (LDP) opposed to the Awami League (AL)[3]. Exhibit 2 at 5. Nevertheless, she found "that any fear of future harm is not objectively reasonable and that any presumption of a well-founded fear based on the finding of past persecution has been rebutted by the Department (DHS)." *Ibid.*

Petitioner appealed the decision to the Board of Immigration Appeals (BIA), which on March 24, 2026, affirmed, without opinion, the IJ's decision. BIA Decision (Exhibit 3).

APPLICABLE LEGAL STANDARD

In deciding whether to grant a stay of removal the Court's "task is therefore to balance 'the likelihood of success on the merits, irreparable injury if a stay is denied, substantial injury to the party opposing a stay if one is issued, and the public interest.' *Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir. 2002) … . We

---

[3] Death threats constitute past persecution "if they are objectively credible and issued by a person or persons with the immediate ability to carry them out." *Matter of E-M-F-S-*, 29 I&N Dec. 379, 384 (BIA 2026). Inasmuch as sticks constitute deadly weapons, *Lee v. Ricks*, 388 F. Supp. 2d 141, 158 (WDNY 2005), the threats issued to Mr. Mukit during the attack that knocked him unconscious meet that standard.

have treated these criteria somewhat like a sliding scale, citing approvingly other circuits' formulation that '[t]he necessary "'level'" or "'degree'" of possibility of success will vary according to the court's assessment of the other stay factors' and explaining that '[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay. Simply stated, more of one excuses less of the other.' *Mohammed*, 309 F.3d at 101." *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006).

## I. APPLICATION OF THE LEGAL STANDARD TO THE INSTANT CASE

### A. Mr. Mukit is likely to prevail on the merits of his petition

> *1. This Court has subject matter jurisdiction to review the BIA's dismissal of Mr. Mukit's appeal.*

This Court has jurisdiction to review final orders of removal. 8 U.S.C. § 1252(a)(1).

> *2. The IJ's conclusion that the DHS rebutted the presumption that Mr. Mukit had a well-founded fear of persecution was not in accordance with law.*

8 U.S.C. § 1208 provides in relevant part that:

**(b) *Eligibility.*** The applicant may qualify as a refugee either because he or she has suffered past persecution or because he or she has a well-founded fear of future persecution.

(1) Past persecution. An applicant shall be found to be a refugee on the basis of past persecution if the applicant can establish that he or she has suffered

persecution in the past in the applicant's country of nationality or, if stateless, in his or her country of last habitual residence, on account of race, religion, nationality, membership in a particular social group, or political opinion, and is unable or unwilling to return to, or avail himself or herself of the protection of, that country owing to such persecution. An applicant who has been found to have established such past persecution shall also be presumed to have a well-founded fear of persecution on the basis of the original claim. That presumption may be rebutted if an asylum officer or immigration judge makes one of the findings described in paragraph (b)(1)(i) of this section. …

(i) Discretionary referral or denial. … an immigration judge, in the exercise of his or her discretion, shall deny the asylum application of an alien found to be a refugee on the basis of past persecution if any of the following is found by a preponderance of the evidence:

**(A)** There has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality or, if stateless, in the applicant's country of last habitual residence, on account of race, religion, nationality, membership in a particular social group, or political opinion;"

Here the IJ expressly found that Mr. Mukit suffered past persecution on

account of his political opinion, but nevertheless held

that the Awami League is no longer in power in Bangladesh. Additionally, the Prime Minister who was an Awami League member, has fled the country in August 2024. Respondent confirmed through his own testimony that there is a new interim government that is not affiliated with the Awami League. DHS has further shown that the current government of Bangladesh has banned all Awami League activity under the anti-terrorism act.

Exhibit 2 at 5.

This conclusion was not in accordance with law.

a. Whether the DHS rebutted the presumption that Mr. Mukit had a well-founded fear of persecution is a question of law

The phrase "questions of law" includes the application of a legal standard to undisputed or established facts. *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 225 (2020). Petitioner does not dispute that the Awami League is no longer in power in Bangladesh, now that the Prime Minister, who was an Awami League member, fled the country in August 2024, nor that there was, at the time of the hearing, a new interim government that is not affiliated with the Awami League, nor that this government banned all Awami League activity under the anti-terrorism act. Since these were the sole grounds upon which the IJ concluded that the DHS had rebutted the presumption that Mr. Mukit had a well-founded fear of persecution on the basis of his political opinion, whether that rebuttal was successful is a question of law.

> b. This Court reviews questions of law arising in review of BIA decisions *de novo*.

This Court reviews questions of law in a noncitizen's petition for review of a final order of removal under the *de novo* standard. This standard applies to both pure questions of law and the application of legal principles to undisputed facts. For example, in *Secaida-Rosales v. INS*, 331 F.3d 297 (2d. Cir. 2003), the Court clarified that when the issue involves the proper application of legal principles to the facts and circumstances of the case, the review is *de novo. Id.* at 307.

Here, the IJ found that just 2 facts were sufficient to refute the presumption that Mr. Mukit had a well-founded fear of future persecution: that the leader of the

AL is no longer the leader of Bangladesh, and that the current government of Bangladesh has banned all Awami League activity under the anti-terrorism act. Since Petitioner disputes neither of them, therefore, whether the DHS successfully rebutted Mr. Mukit's presumption of future persecution is a question of law which this Court decides *de novo*.

    c.  The mere fact that AL's leader no longer leads Bangladesh does not rebut the presumption that Mr. Mukit has a well-founded fear of persecution.

"'[A]bstract evidence of generalized changes in country conditions, without more, cannot rebut a presumption of a well-founded fear of future persecution.'" *Mendez v. Garland*, 67 F.4th 474, 482 (1st Cir. 2023), quoting *Palma-Mazariegos v. Gonzales*, 428 F.3d 30, 35 (1st Cir. 2005). Further, it is error for the agency to fail " to conduct an 'individualized analysis of how changed conditions [would] affect the specific petitioner's situation.' Borja, 175 F.3d at 738 (internal quotation marks omitted) … 'information about general changes in the country is not sufficient.' Id. (internal quotations marks omitted)." *Tambadou v. Gonzales*, 446 F.3d 298, 303 (2d. Cir. 2006).

11

Here, as noted, the IJ's decision rests entirely upon just two facts: that the Awami League no longer controls Bangladesh[4] and that the current government of Bangladesh has banned all Awami League activity under the anti-terrorism act. A virtually identical fact – that the National Unity of Hope party ("UNE") no longer held power in Guatemala – was found insufficient in *Mendez* to overcome the presumption that the Petitioner had a well-founded fear of persecution by UNE members. *Id.* at 482. In particular, the court found "nothing in the record to suggest that UNE's loss of the presidency prevents UNE from persecuting its political opponents (and that) even the IJ recognized UNE's continued political influence in Guatemala in its analysis of Mendez's past persecution claim, noting that:

> UNE is a political party who does hold representation in the political scheme and structure of Guatemala. They have at times had majority power in the ruling party, and at times have had the leader -- the head of state of the country as a member of their party. Thus, regardless of the UNE's current representation and power structure, they are a political party capable of exerting the influence of the government. . . . Given the record before us, we fail to see how the 2017 report's reference to UNE's loss of the presidency in 2015 supports the BIA's finding that political conditions in Guatemala [**1 have "fundamental[ly] change[d]" in a way that prevents UNE from persecuting its political opponents.

> Nevertheless, even if UNE had become powerless on the national level, DHS still cannot satisfy its burden with the general statements about national

---

[4] This concise statement incorporates all of the following points the IJ relied on in finding the presumption rebutted: that the Awami League is no longer in power in Bangladesh, the Prime Minister who was an Awami League member, fled the country in August 2024 and that there is a new interim government that is not affiliated with the Awami League.

politics untethered to Mendez's particular substantiated fear. Mendez's presumptive fear turns on UNE's power and influence at the local and regional levels of government. It follows that a generic statement about UNE's national profile, without more, lacks the requisite connection to Mendez's particular fear. See Hernandez-Barrera v. Ashcroft, 373 F.3d 9, 24 (1st Cir. 2004). Such attempts at improperly equating a party's diminished posture on the national level to its influence on local politics is precisely what the particularized evidence  [*484]  requirement was intended to prevent. See Fergiste, 138 F.3d at 19[5].

*Mendez*, 67 F.4th at 483-484.

Aside from the fact that AL has been banned from "all activities"[6],  the instant matter is virtually indistinguishable from *Mendez*. Here, as in *Mendez*, the IJ decided that the presumption that Petitioner had a well-founded fear was "rebutted" by almost the most abstract evidence imaginable – that fact there was a change of the ruling party of the leader of Bangladesh, nothing more. There is no applicable evidence in the record of any other change than the replacement of the leader (and the banning of AL's "activities, which will be discussed below). For example, there is no evidence in the record of the make up of the Cabinet or the parliament on a national level. Further, the AL, like UNE, has at times – such as 2009 to 2024, had majority power in the country and the head of state was a member of its party. Accordingly, as in *Mendez*, reports referencing the AL's loss of the prime ministership have not

---

[5] *Fergiste v. INS*, 138 F.3d 14 (1st Cir. 1998).
[6] This is discussed below. It should be understood that future reference to changed country conditions include this ban, even if it is not directly mentioned.

13

fundamentally changed country conditions in a way that prevents the applicant from being persecuted by members of the former ruling party.

To the contrary, Mr. Mukit credibly[7] testified that after the overthrow of Sheik Hasina, AL "continue with their activities. They are -- they haven't been arrested, or they haven't been brought under or under any justice. They continued with terrorizing people." Transcript (Tr.) at 45[8]. In fact, after Sheik Hasina's departure, AL "became more aggressive, and they are more aggressive and especially towards the people of the opposition party -- their opposition parties. And are -- they haven't been arrested, or they haven't been brought under or under any justice. They continued with terrorizing people. They are robbing. They're stealing. And the country's condition right now is actually they are basically like, you know, they're attacking the leaders of the opposition party. much worse than before." Tr. at 43.

Further, Mr. Mukit testified that the police and army are still working on behalf of the AL because they were formed by members of the AL. Tr. At 44. His testimony is corroborated with evidence from the news media of AL's continued persecution of its opponents since Sheikh Hasina's departure. *See, e.g.,* Petitioner's "Proffered Evidence in Support of I-589", Exhibit 6, Exhibits xvii, xxii and xxxiv.

Particularly significant is the fact that the record contains no evidence that

---

[7] The IJ expressly found him to be a credible witness. I.J. at 4, Add. at 18.
[8] Exhibit 5.

the AL has ceased exercising power on the local level. In fact, the credible testimony of Mr. Mukit, shows that the AL continues to be powerful in his area, Tr. At 38, 42. His testimony finds extensive support in Exhibit 6, a part of the record below, which shows how the Awami League in the past 15 years expanded its hold on local governments and security apparatus of Bangladesh. Exhibit 6 shows that "over 70%" of local chairmen" in Bangladesh have been "close relatives or associates of ministers or MPs [member of Parliament]" during the time the Awami League (AL) was in power *Id.* at 151.

In the past 15 years, when AL had been in power, they "politicized" the police force by "increasingly recruit[ing]…from Chhatra League, the student affiliate of Awami League" *Id* at 160-161. The police's loyalty to Awami League was reinforced through increased privileges and promotions, which were dependent on political connections throughout the 15-year rule by the Awami League. *Id* at. p 163-164. Exhibit 6 shows that 178 high level posts were created for Awami League cadres and also majority of 120,000 were recruited on political and partisan considerations. *Id.* at 190. Thus, the police have been routinely described as "police league" and "government batons." *Id.* at 157. There is no evidence in the record to show that these hundreds or thousands of Awami League leaning police officers and local administration leaders have completely forsaken Awami League. In fact, the record shows that Awami League have strong local leadership in all 64 districts in

15

Bangladesh. *See Id* at p. 247.

Additionally, there is evidence of continued violence by the Awami League supporters against opposition party members even after the ouster of the Awami League government, as late as February of 2025. *Id.* at pp. 143, 202, 206, 211, 213, 215, 229, 233-34. Even though Sheikh Hasina fled the country, she has claimed that she did not resign and would come back to the country. *Id.* at p. 222. She directed Awami League youth groups to prepare for "armed resistance" and has mobilized her party workers against the Yunus government. *Id.* at p. 227, 232.

Importantly, the record shows, at best, that Bangladesh is currently in an unpredictable situation. The record shows that the interim government struggled to maintain control. *Id.* at p. 246. In fact, Dr. Yunus' government was not able to achieve the goals of reform and due to trust deficit amongst political stakeholders, he even threatened to resign. *Id at* 250, 256. The record indicates that, "Yunus' ambitious reform agenda is faltering with analysts noting that key arms of the state including police and civil bureaucracy, are increasingly slipping beyond the interim government." *Id.* at 271. [9]

As this Court has noted, "[t]he removal of a persecuting despot might vitiate an asylum applicant's well-founded fear of persecution, but in many cases lingering

---

[9] The IJ's decision pre-dated the recent replacement of Dr. Yunus's government by the Bangladesh Nationalist Party,

elements of a despot's regime may still pose a threat to an applicant's life and safety." *Burger v. Gonzales,* 498 F.3d 131, 135 (2d Cir. 2007). Here, the record as a whole supports Mr. Mukit's claim that his life remains in danger.

Accordingly, the evidence that the Prime Minister of Bangladesh is no longer a member of the Alami League does not begin to rebut the presumption that Mr. Mukit has a well-founded fear of persecution. But such abstract evidence is virtually all that led the IJ to the conclusion that Mr. Mukit's well-founded fear had been refuted. Only one other fact – the banning of AL "activities" was cited in support of the finding that the presumption of future persecution has been refuted. And that proves nothing.

> d.  Any ban on AL "activities" does not prevent it from persecuting its opponents.

The mere fact that the Bangladesh government banned the activities of the Awami League, or indeed, even the organization altogether, does not begin to establish that it could not persecute Mr. Mukit. To the contrary, it cannot be seriously asserted that even if an organization is entirely illegal, as opposed to merely suffering under a temporary ban of its activities[10], this prevents it from persecuting

---

[10] The then leader of Bangladeshi, Chief Adviser Professor Muhammad Yunus, was quoted as saying "[w]have not banned the Awami League yet. The activities of the Awami League are banned temporarily." PROFFERED EVIDENCE IN SUPPORT OF I-589, PART 1 (Exhibit 6) at 289.

17

its opponents. See e.g., *Borja v. INS*, 175 F.3d 732, 734 (9th Cir.1999), in which the court agreed that the Petitioner's "unchallenged testimony compels the conclusion that the NPA (a violent, revolutionary Communist group which actively opposes the Philippine government) persecuted her, and that they did so - at least in part - on account of her political opinion; and she maintains that this persecution qualifies her under our laws for political asylum.". The court agreed. *Borja,* 175 F.3d at 736.

Like the Mexican drug cartels, the El Salvadoran gangs, the American Mafia and the Islamic State of Iraq and Syria, illegal organizations routinely persecute their enemies throughout the world, and the mere fact that they are illegal does not in any way prevent them from doing so. So likewise here, even if the AL was an illegal organization in Bangladesh, that would be insufficient as a matter of law to show that it is incapable of persecuting Mr. Mukit.

Since neither of the facts the IJ cited in support of her decision actually are evidence that Mr. Mukit no longer has a well founded fear of persecution in Bangladesh, the IJ erred as a matter of law in so holding, and in denying the Petitioner's application for asylum, as did the Board in affirming that decision. Consequently, it is highly likely that he will prevail in this petition.

**B.  Mr. Mukit will suffer irreparable harm if he is removed.**

It hardly merits discussion that if in fact, Mr. Mukit has a well-founded fear of being persecuted in Bangladesh, then removal there to be exposed to the tender

18

mercies of his persecutors will cause him irreparable harm. "The Executive makes no credible attempt to deny that the Plaintiffs will suffer irreparable harm if they are expelled to places where they will be persecuted or tortured." *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733 (D.C. Cir. 2022). Accord *Nunez v. Boldin*, 537 F. Supp. 578, 587 (S.D. Tex. 1982) ("Deportation to a country where one's life would be threatened obviously would result in irreparable injury"), *appeal dismissed without op.*, 692 F.2d 755 (5th Cir. 1982); *see also Mahdejian v. Bradford*, 2025 U.S. Dist. LEXIS 154931, 2025 WL 2269796, at *4-5 (E.D. Tex. July 3, 2025) ("Here, the threatened harm is clear and simple: persecution, torture, and death."); *accord Singh v. Garland*, 4 F.4th 322, 329 (5th Cir. 2021) (finding that danger of physical injury or that one's life is in jeopardy upon removal constituted irreparable harm), *withdrawn*, 855 F. App'x 958 (5th Cir. 2021) (withdrawing opinion "[t]o avoid any uncertainty [**40] in its efficacy" while the stay remained in effect because grant of stay does not create settled law and is not binding); *see also Beyhaqi v. Noem*, 2025 U.S. Dist. LEXIS 80136, 2025 WL 1196003, at *2 (S.D. Tex. Apr. 22, 2025) (finding irreparable harm when the revocation of F-1 status created a potential for detention and deportation); *Misirbekov v. Venegas*, 793 F. Supp. 3d 892, 2025 U.S. Dist. LEXIS 151432, 2025 WL 2201470, at *2 (S.D. Tex. Aug. 1, 2025) (finding irreparable harm where petitioner had not been given due process and faced potential refoulement because of removal to a third country after being granted withholding of

removal); *Tesfamichael v. Gonzales*, 411 F.3d 169, 178 (5th Cir. 2005) (finding that petitioners demonstrated likelihood of irreparable harm, in part because of potential persecution if they were deported).

Accordingly, if the Petitioner is likely to prevail on the merits of his petition, he is also likely to suffer irreparable harm upon removal.

### C. The public interest favors a stay.

Finally, the third and fourth factors

merge when the Government is the opposing party. In considering them, courts must be mindful that the Government's role as the respondent in every removal proceeding does not make the public interest in each individual one negligible, as some courts have concluded. … (However) there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm. … (Nevertheless) [t]he interest in prompt removal may be heightened by the circumstances as well--if, for example, the alien is particularly dangerous, or has substantially prolonged his stay by abusing the processes provided to him.

*Nken*, 556 U.S. at 435-436.

Since there is no claim that either of these caveats apply to Mr. Mukit, the public interest favors him not being removed to a country where he is likely to suffer substantial harm.

### CONCLUSION

The Court should order a stay of Mr. Mukit's removal during the pendency of this petition, and prior to his DHS check-in date of April 10, 2026.

Respectfully submitted this 6th day of April, 2026.

/s/*Michael E.Piston*
Michael E. Piston
Attorney for the Petitioner
38-08 Union St., Ste 9A
Flushing, NY 11354
Fax: 206-770-6350
Email: michaelpiston4@gmail.com

## CERTIFICATE OF COMPLIANCE

I certify that this motion contains 3589 words and so does not exceed the limitations of FRAP 27(d).

/s/*Michael E. Piston*
April 6, 2026

## CERTIFICATE OF SERVICE

I, the undersigned, certify that I served the foregoing on this day to the parties listed below via FedEx for next day delivery.

Todd Blanche, Acting Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

s
/s/ Michael E. Piston
Michael E. Piston
Attorney for the Petitioner

38-08 Union St., Suite 9A
Flushing, NY 11354
(646) 876-3772
Fx: 206-770-6350
michaelpiston4@gmail.com

Dated: April 6, 2026